IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MALCOLM BAIN,  )
                Plaintiff,  )
                         )
     v.  )    Civil Action No. 15-680
                         )
CAROLYN W. COLVIN,  )
ACTING COMMISSIONER OF  )
SOCIAL SECURITY,  )
                         )
                Defendant.  )

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 6th day of September, 2016, upon due consideration of the parties' cross-motions for summary judgment relating to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 9) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending application for disability insurance benefits April 25, 2012, alleging a disability onset date of December 6, 2010,[1] due to, *inter alia*, nerve damage and lingering pain in his back, neck, shoulder and arms resulting from second degree burns,[2] as well as numbness in his arms and hands. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on January 14, 2014, at which plaintiff, represented by counsel, appeared and testified. On January 17, 2014, the ALJ issued a decision finding that plaintiff is not disabled. On March 24, 2015, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 57 years old at the time of the ALJ's decision and is classified as a person of advanced age under the regulations. 20 C.F.R. §404.1563(c). He has at least a high school education and has past relevant work experience as a mail room clerk, cleaner, banquet set-up person and construction worker, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although plaintiff has the severe impairments of status post-burn injury, status post-bilateral carpal tunnel surgeries and bilateral shoulder strain, none of those impairments, alone or in combination, meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

---

[1] Because plaintiff had acquired sufficient coverage to remain insured only through December 31, 2013, the relevant time period for purposes of plaintiff's Title II application is the alleged onset date of December 6, 2010, through the date last insured of December 31, 2013, and plaintiff bears the burden of showing he became disabled during that time period.

[2] Plaintiff was injured in a work accident on December 7, 2010, when hot water was spilled on him, resulting in first and second degree burns of his entire back, neck, right ear, and right shoulder with some blistering and a small drying area of the left wrist. (R. 261).

The ALJ also found that plaintiff retains the residual functional capacity ("RFC") to engage in work at the light exertional level but with numerous restrictions necessary to accommodate the limitations arising from his impairments.[3] Comparing plaintiff's residual functional capacity with the physical and mental demands of his past relevant work, and in reliance on the vocational expert's testimony, the ALJ found that plaintiff is capable of performing his past relevant work of mail room clerk as he actually performed it and as it generally is performed in the national economy. (R. 21). Accordingly, the ALJ concluded at step 4 of the sequential evaluation process that plaintiff is not disabled under the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability.[4] 20 C.F.R.

---

[3] Specifically, the ALJ found that plaintiff has the RFC to perform light work with the following restrictions: "[plaintiff] can only occasionally kneel, crawl, and climb ladders, ropes, and scaffolds. He cannot perform work overhead that would require overhead reaching with either arm. He is limited to jobs that require only occasional feeling (as defined in the DOT), frequent fingering (as defined in DOT). The claimant is unable to work in environments with exposure to temperature extremes." (R. 16-17).

[4] The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003).

§404.1520. If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 540 U.S. 20 (2003).

Here, plaintiff raises three challenges to the ALJ's findings: (1) the ALJ improperly analyzed and weighed the medical evidence; (2) the ALJ improperly evaluated plaintiff's credibility; and, (3) the ALJ failed to incorporate additional limitations into the residual functional capacity finding. Upon review, the court is satisfied that the ALJ correctly evaluated both the medical evidence and plaintiff's credibility and that all of his findings, including the residual functional capacity finding, are supported by substantial evidence.

Plaintiff's first argument is that the ALJ improperly analyzed the medical evidence. Specifically, he argues that the ALJ erroneously discounted the opinion evidence from his treating physician, Dr. Elie Francis, who opined in May and in August of 2011 that plaintiff is unable to work because of uncontrolled pain, (R. 247-50), and who, in a January 2014 assessment, indicated that plaintiff can only stand and/or walk 1 hour and sit 2 hours in an 8-hour workday, and that he only occasionally can lift 0 to 5 pounds. (R. 414). Plaintiff further contends that the ALJ erroneously gave more weight to the opinion of the state agency physician, Dr. Paul Fox, than to the opinions of Dr. Francis. Plaintiff's arguments are without merit.

The rules by which the ALJ is to evaluate the medical evidence are well-established under the Social Security Regulations and the law of this circuit. Opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(c)(2); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

substantial evidence in the record, it will be given controlling weight. Id. However, when a treating source's opinion is not entitled to controlling weight, it is to be evaluated and weighed under the same standards applied to all other medical opinions, taking into account numerous factors, including the opinion's supportability, consistency and specialization. 20 C.F.R. §404.1527(c).

Importantly, the opinion of any physician, including a treating physician, as to the claimant's residual functional capacity, or on the ultimate determination of disability, never is entitled to special significance. 20 C.F.R. §404.1527(d); SSR 96-5p. "The law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Rather, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); *see* 20 C.F.R. §§404.1527(d)(2) and (3); 404.1546(c).

Here, the ALJ adhered to the foregoing standards in evaluating the medical evidence. The ALJ's decision specifically addressed the opinion evidence from Dr. Francis and adequately explained why the ALJ was according her opinions "little weight." (R. 20). The ALJ noted that the opinion that plaintiff is disabled due to pain was conclusory, that Dr. Francis failed to provide any explanation as to the medical basis for it, and that it was inconsistent with her treatment records and the other medical opinions of record. (Id.) As to the January 2014 physical capacity evaluation, the ALJ accorded that assessment little weight because it was "wholly unsupported by the objective diagnostic studies, findings and [Dr. Francis's] treatment notes" and because it was inconsistent with plaintiff's reported activities of daily living. (Id.)

The court finds no error in the ALJ's rejection of Dr. Francis's unsupported opinions. Initially, as already noted, it is for the ALJ alone to make the ultimate determination of disability, and the opinion of a treating physician that a claimant is disabled is not entitled to any special significance. Chandler, 667 F.3d at 361; 20 C.F.R. §404.1527(d).

Moreover, as the ALJ pointed out, the objective medical evidence, including Dr. Francis's own treatment records, does not support her opinion that plaintiff is unable to work at all, nor her assessment that plaintiff is extremely limited in his ability to stand, walk, sit and lift. In fact, the treatment records from Dr. Malcolm Berger, plaintiff's neurologist, and Dr. Corey A. Pacek, who performed plaintiff's successful carpal tunnel surgery, contradict Dr. Francis's dire assessment. Dr. Berger performed a number of objective tests in May of 2012 and in November of 2012, all of which revealed that plaintiff's shoulder shrug was strong and symmetric, and that his gait, muscle strength, tone and mass all were normal, as were his fine motor movements, reflexes and reactions to sensory stimulation in all four extremities. (R. 232). Significantly, contrary to Dr. Francis's assessment that plaintiff could only lift 5 pounds, Dr. Berger recommended that plaintiff avoid lifting more than 25 pounds. (R. 304). The ALJ gave great weight to Dr. Berger's assessment in crafting plaintiff's residual functional capacity as it was well-supported by the objective evidence. (R. 20). For the same reason, he gave great weight to Dr. Pacek's opinion that plaintiff could return to full work duty after his successful carpal tunnel release surgeries. (Id.)

Contrary to plaintiff's contention, the court also finds no error in the ALJ's decision to give more credence to the assessment of Dr. Fox, the state agency physician, than to that of Dr. Francis. Dr. Fox indicated that plaintiff can lift and carry up to 20 pounds occasionally and 10 pounds frequently, and that plaintiff can stand or walk up to 6 hours and sit 6 hours in an 8-

hour workday. (R. 19-20). The ALJ gave Dr. Fox's opinion "great weight" because "it was consistent with [plaintiff's] treatment records and the objective diagnostic evidence." (R. 20).

It is well-settled that "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records ... [s]tate agent opinions merit significant consideration as well." Chandler, 667 F.3d at 361. Pursuant to the Regulations, state agency medical consultants are considered to be "highly qualified physicians ... who are also experts in Social Security disability evaluation." 20 C.F.R. §404.1527(e)(2)(i). Accordingly, while not bound by findings made by reviewing physicians, the ALJ is to consider those findings as opinion evidence, and is to evaluate them under the same standards as all other medical opinion evidence. 20 C.F.R. §404.1527(e)(2)(ii); SSR 96-6p. Here, substantial evidence in the record supports the ALJ's conclusion that the opinion of Dr. Fox is more consistent with the totality of the evidence, including that from Dr. Berger and Dr. Pacek, than that of Dr. Francis. Accordingly, the ALJ properly gave the state agency physician's opinion greater weight.

It is axiomatic in social security cases that the ALJ must give some indication of the evidence that he rejects and the reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Here, the ALJ reviewed and discussed all of the pertinent medical evidence and thoroughly explained his reasons for giving each relevant opinion the weight that he gave it. (R. 18-20). The court has reviewed the ALJ's decision and the record as a whole and is satisfied that the ALJ's evaluation of the medical evidence is supported by substantial evidence.

Plaintiff's second argument is that the ALJ improperly evaluated plaintiff's subjective statements as to the severity of his pain and the limitations arising therefrom. However, the court is satisfied that the ALJ adhered to the appropriate standards in evaluating plaintiff's

statements regarding his pain and limitations and more than adequately explained the reasons underlying his credibility determination.

As required under the regulations, the ALJ in this case properly considered plaintiff's subjective statements as to the intensity, persistence and limiting effects of his symptoms in light of the objective medical evidence, as well as all of the other factors relevant to plaintiff's symptoms as set forth in 20 C.F.R. §404.1529(c). *See also* SSR 96-7p. The ALJ thoroughly explained in the decision why plaintiff's statements concerning "the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (R. 17-21). Specifically, the ALJ reviewed the objective medical evidence and determined that while the medical records support plaintiff's complaints of some residual pain from his burn injury, the treatment records and plaintiff's "essentially routine and conservative treatment" for his lingering pain do not support his allegations of debilitating pain. (R. 19).

The ALJ further determined that plaintiff's reported activities of daily living likewise were inconsistent with his complaints of disabling pain. The ALJ noted that plaintiff testified that he is able to drive a car, assist with some household chores, likes to build small models, uses the computer and reads the news. He also testified that he vacationed in Montana and that he likes to go fishing and camping at his cabin.[5] (R. 17; 20).

---

[5] Plaintiff avers in his briefing to this court that he has not gone fishing since prior to his burn injury in 2010 and that he does not "go camping," but rather only sits on the porch at his camp. He also states that he has not built any models since his burn injury. Plaintiff's contentions are belied by his own testimony, under oath, at the hearing before the ALJ. In response to the ALJ's inquiry as to whether plaintiff has any hobbies, plaintiff stated, "I like to fish and I like to camp, go camping." (R. 43) When the ALJ asked when was the last time he engaged in those activities, plaintiff responded: "Fishing was in the spring, camping is a couple months ago." (Id.) Plaintiff did not tell the ALJ that he "only sat on the porch" at the camp, but that he likes to "go camping." He also did not indicate at the hearing that he has not been able to build models since before his injury in 2010 but expressly stated, "I like to do ... like small models on occasion, whenever I can do them." (R. 44). In determining whether the ALJ's decision is supported by substantial evidence, this court is limited to a review of the administrative record and cannot, and will not, consider plaintiff's attempts to clarify and/or expand upon his previous sworn testimony before the ALJ, and his allegation that his transcribed testimony was "recorded inaccurately" is frivolous.

While it is true, as plaintiff now asserts, that sporadic and transitory activities of daily living cannot be used to show an ability to engage in substantial gainful activity, *see* Fargnoli, 247 F.3d at 40, n.5, the ALJ did not do so here. Instead, the ALJ properly considered plaintiff's allegations of debilitating pain in light of *not only* his activities of daily living but *also* in light of the objective medical evidence, which revealed the absence of clinical findings supporting plaintiff's allegations of totally debilitating pain. Based on *all* of the evidence, the ALJ found plaintiff's statements to be not entirely credible.

It also is important to emphasize that the ALJ did not reject plaintiff's testimony entirely. Rather, to the extent plaintiff's statements as to the limitations arising from his impairments are supported by the medical and other relevant evidence, the ALJ's residual functional capacity finding accommodated those limitations. Only to the extent that plaintiff's allegations are not so supported did the ALJ find them to be not credible.

The record demonstrates that the ALJ adhered to the appropriate standards in evaluating plaintiff's credibility and it is not this court's function to re-weigh the evidence and arrive at its own credibility determination. *See* Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003)(ALJ's conclusions as to the credibility of a claimant's subjective complaints generally are entitled to great deference and should not be discarded lightly given the ALJ's opportunity to observe the claimant's demeanor). Rather, this court must only determine whether the ALJ's credibility determination is supported by substantial evidence, and is satisfied here that it is.

Plaintiff's final argument is that the ALJ's residual functional capacity finding[6] failed to account for all of plaintiff's work-related limitations, in particular, Dr. Francis's restrictions that plaintiff can only stand and walk one hour, and sit for two hours, in an 8-hour workday.

However, as already discussed, the more restrictive limitations advanced by Dr. Francis simply were not supported by the objective medical evidence. The court is satisfied that the ALJ's residual functional capacity finding in this case is supported by substantial evidence as outlined in the decision, and that the ALJ's hypothetical to the vocational expert incorporating that residual functional capacity finding adequately accounted for all of plaintiff's limitations that were supported by the objective evidence. Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record). Accordingly, the vocational expert's response to that hypothetical indicating that, despite those restrictions, plaintiff can perform his past relevant work as a mail room clerk, constitutes substantial evidence supporting the ALJ's finding that plaintiff is not disabled.[7]

---

[6] Residual functional capacity is defined as the most an individual still can do in a work setting despite the limitations caused by his impairments. Fargnoli, 247 F.3d at 40; 20 C.F.R. §404.1545(a)(1). Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work-setting on a regular and continuing basis, which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. In assessing residual functional capacity, the ALJ is to consider all of the relevant medical and other evidence in the case record in determining the individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(3)-(4); SSR 96-8p. The ALJ's residual functional capacity finding must "'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 577 F.3d at 41 (citation omitted).

[7] Likewise, as a hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record, the ALJ did not err in rejecting the vocational expert's response that an individual limited to standing and walking 1 hour and sitting 2 hours in an 8-hour workday would not be able to perform any work, as those limitations are not supported by the medical evidence. See Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004)(ALJ has authority to disregard vocational expert's response to hypothetical inconsistent with evidence).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

Gustave Diamond
United States District Judge

cc: Malcolm Bain (pro se)
529 Parker Road
Sarver, PA 16055

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)

- 11 -